No. 2758

Second Circuit

---

CLEATON v. DOWLING

---

(November 10, 1927. Opinion and Decree.)
(December 21, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest — Brokers — Par. 16; Things—Par. 4; Timber—Par. 1.**

Standing timber is not real estate and, therefore, Act No. 236 of 1920 requiring real estate brokers to obtain a license is not applicable. (In accordance with Supreme Court decision.)

2. **Louisiana Digest—Appeal—Par. 625.**

The appellate court will not disturb a judgment of the trial court based solely upon facts unless manifestly erroneous.

Appeal from the Third Judicial District Court of Louisiana, Parish of Lincoln. Hon. S. D. Pearce, Judge.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

T. S. Price, of Ruston, attorney for plaintiff, appellee.

C. B. Roberts, J. W. Elder, of Ruston, attorneys for defendant, appellant.

ODOM, J. Plaintiff brought this suit to collect $1250.00, which sum, he alleges, is due him by defendant under a verbal contract as commission on a sale of standing timber.

He alleges that Dowling, the defendant, who owned a tract of timber, agreed to pay him 5% on the sale price thereof if he, plaintiff, would find a purchaser.

He alleges that he found a purchaser, informed defendant of that fact, that the sale was made, and that defendant now refuses to pay his commission.

The defendant contests the claim on the ground that he made no such verbal contract with plaintiff to pay him anything, and that plaintiff's claim is therefore without foundation.

The lower court gave plaintiff judgment as prayed for, and defendant appealed.

Defendant, in limine, tendered an exception of no cause of action upon the ground that the pleadings disclosed that plaintiff was not a licensed real estate broker. The lower court overruled the exception and decided the case on its merits. The case was appealed to this court and we, without deciding it on its merits, reversed the judgment of the lower court and sustained the exception. The case was carried to the Supreme Court on a writ. That court reversed this court on that point, holding that standing timber is not real estate, and therefore Act No. 236 of 1920 requiring real estate brokers to obtain a license is not applicable. The case was remanded to this court with instructions that it be heard and decided on the merits. It is now before us on the merits.

OPINION

Only questions of fact are involved. Only three witnesses testified in the case —plaintiff, defendant, and Mr. Edwin Win-

lock, president and manager of the Winlock Lumber Company, which company purchased defendant's timber for a cash consideration of $25,000.00.

Plaintiff testified that defendant agreed to pay him 5% commission on the sale price of the tract of timber if he, plaintiff, would find a purchaser. He says the price was not fixed, it being agreed that he was to find a purchaser, send him to defendant, and that defendant and the purchaser would arrange the price—in other words, all plaintiff had to do to earn the commission was to find and put defendant in touch with a purchaser.

He says his conversation and agreement with defendant took place on a street in Ruston; that he saw Edwin Winlock, president of the Winlock Lumber Company, on the following morning and told him he could purchase the timber, and that Winlock said he would buy if the price was satisfactory. He then, so he testified, went to defendant and told him he found a purchaser for his timber in the person of Edwin Winlock, president of the Winlock Lumber Company.

Mr. Winlock, called as a witness for plaintiff, testified that he obtained his information that this tract of timber was for sale from the plaintiff, Cleaton, although he could not say positively that plaintiff told him who owned it. He said that subsequently he met defendant and that defendant mentioned the sale of the timber to him and that he looked at the timber, agreed upon a price with defendant, and finally closed the sale at $25,000.00.

Winlock did not testify that he went to defendant to purchase the timber, but stated that his meeting with defendant was by chance and that defendant brought up the question of the sale.

The defendant testified that he had discussed the question of the sale of his timber with Cleaton, the plaintiff, but, he said:

"I didn't discuss it with Mr. Cleaton on the basis of giving him any contract at all."

His testimony, in substance, is that he and Cleaton happened to be in the lobby of the Ruston Hotel at the same time, sitting about twelve or fifteen feet apart; that Cleaton called him over to him and that the two engaged for a while in conversation, as they usually did; that Cleaton asked if he cared to sell his timber, whereupon, defendant says, he told Cleaton that Mr. Roy and others had been trying to sell it for him and that he had decided to sell it himself without the intervention of an agent; that Cleaton suggested that he be permitted to sell it on a 5% commission basis, and that he informed Cleaton that he "didn't want anyone to help me sell it at the present time".

He said, further, that he told Cleaton that he had two prospective purchasers in view, namely: Mr. Winlock and Mr. Meeks, and that he was on his way to see Winlock then, whereupon Cleaton told him that they were the parties he had in view.

He says he told Cleaton that if he did not sell to Winlock or Meeks he would see him later. He denies that Cleaton told him that Winlock would buy.

Plaintiff was called in rebuttal after hearing defendant's testimony. He denied that he had the conversation with defendant in the lobby of the hotel but said the conversation took place in front of the hotel, near the railroad, and reiterated his former statement that defendant had agreed to pay him a 5% commission on the sale if he would find a buyer.

The testimony of the plaintiff and defendant on the vital point as to whether there was a contract is as contradictory

as can be imagined and is utterly irreconcilable.

There are, however, some circumstances which favor plaintiff's side of the case.

It does not seem reasonable that plaintiff would have sought Winlock and would have told him that this timber was for sale if defendant had not agreed to pay him a commission for his services in finding a buyer.

Again, defendant says he had Winlock in mind as a prospective purchaser at the time he talked with plaintiff. If he had, it is rather strange that he did not busy himself to find him until after he had the conversation with plaintiff. Defendant says that when he talked with plaintiff he was then on his way to see Winlock. That may be true, and, if it is, it is unfortunate for him that he happened to seek Winlock at the very time he and Cleaton had their conversation. Defendant says, however, that he had gone to Winlock's lumber shed on a previous occasion to see him but failed to find him home. That is another unfortunate circumstance.

Again, Mr. Winlock says that in his conversation with defendant, defendant told him not to say anything about the negotiations with reference to the sale because someone might claim a commission on the sale; but he said he could not be positive that defendant mentioned Cleaton's name.

Also Mr. Winlock was asked if defendant at any time during his negotiations for the sale of the timber said anything about having had the matter of the sale up with plaintiff, and had an agreement with him of any kind, and he answered:

"It is my recollection that he did."

These circumstances and the testimony of Winlock corroborate plaintiff's testimony.

In a most elaborate written opinion, in which he discussed the testimony in detail, the learned District Judge, in closing, said:

"The court listened attentively to the testimony of the witnesses, noted their manner of testifying and the reasonableness of their statements, and has since carefully read and reread the testimony, and has reached the conclusion that the evidence preponderates in favor of the fact that there was an agreement entered into by and between plaintiff and defendant as detailed by plaintiff in his testimony."

It is a rule long established and of universal application that an appellate court will not disturb a judgment of a trial court based solely upon questions of fact, unless manifestly erroneous.

See Louisiana Digest, Vol. 1, Sec. 625, page 591—Appeal.

There is no manifest error in the judgment appealed from and it is accordingly affirmed.